ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| EDWIN TIRADO GONZÁLEZ<br><br>RECURRENTE<br><br>v.<br><br>NEGOCIADO DE SEGURIDA DE EMPLEO<br><br>RECURRIDO | KLRA202400436 | *Apelación*, acogida como Revisión Administrativa, Procedente del Departamento del Trabajo y Recursos Humanos<br><br>Caso Núm.: PUA-08921-24<br><br>Sobre: Inelegibilidad a los beneficios del "Pandemic Unemployment Assistance" (PUA), "Coronavirus Aid, Relief, and Economic Security Act", Ley Pública 116-136 (CARES) del 27 de marzo de 2020 |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, el Juez Campos Pérez y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece la parte recurrente, Edwin Tirado González, quien acude por derecho propio (en adelante, Sr. Tirado González o parte recurrente) mediante un recurso de *Apelación*, acogido como *Revisión Administrativa*, y nos solicita la revisión de la *Decisión del Secretario del Trabajo y Recursos Humanos* emitida el 28 de mayo de 2024 y notificada, el mismo día por el Departamento del Trabajo y Recursos Humanos (en adelante, DTRH). Mediante dicho dictamen, se confirmó una *Resolución* del árbitro que declaró al Sr. Tirado González inelegible para los beneficios del seguro por desempleo a tenor con la ley *Coronavirus Aid, Relief, and Economic Security Act, infra.*

Por los fundamentos que expondremos, se confirma el dictamen recurrido.

**I**

El 15 de septiembre de 2020, el Sr. Tirado González solicitó los beneficios de la Asistencia de Desempleo por Pandemia (en adelante, PUA) en la reclamación Núm. A00-000-1059-8910. En atención a esta solicitud, el 15 de septiembre de 2020, el Negociado de Seguridad de Empleo del Departamento del Trabajo y Recursos Humanos del Gobierno de Puerto Rico (en adelante, NSE) emitió una *Determinación Monetaria*, mediante la cual determinó que el Sr. Tirado González cumplía con los requisitos de elegibilidad para establecer una reclamación para obtener los beneficios del PUA.[1] La carta expresaba, además, que tenía derecho a recibir los beneficios **"siempre y cuando no sea descalificado(a) ni resulte inelegible por otras razones**." Asimismo, el 9 de enero de 2021, el NSE emitió una *Redeterminación Monetaria*, en la cual determinó igualmente que el Sr. Tirado González era elegible y aumentó la cantidad máxima de beneficios.[2]

El 2 de febrero de 2021, el NSE emitió una *Notificación de Cambios al Programa* a través de la cual informó que el estatuto federal de Asistencia Continuada para Trabajadores Desempleados aumentó el máximo de beneficios del PUA.[3] Además, el 20 de marzo de 2021, el NSE emitió otra *Redeterminación Monetaria* en donde determinó nuevamente que el Sr. Tirado González era elegible y aumentó el máximo de beneficios.[4]

El 13 de abril de 2021, el Sr. Tirado González recibió una carta del NSE en donde se le requería información sobre Verificación de Empleo.[5] La misiva señalaba que si el Sr. Tirado González resultaba

---

[1] Apéndice del recurso, pág. 1.
[2] Apéndice del recurso, pág. 2.
[3] Apéndice del recurso, pág. 3.
[4] Apéndice del recurso, pág. 4.
[5] Apéndice del recurso, págs. 5-6.

inelegible para recibir los beneficios, tendría que devolver la cantidad de los beneficios que había recibido. En respuesta, el 9 de julio de 2021, el Sr. Tirado González presentó una carta alegando que poseía un bachillerato en Tecnología en Ingeniería Electrónica de la UPR; que su esposa era farmacéutica, por lo cual era empleada esencial de primera línea y laboraba para el sistema de salud privado; que él era el cuidador principal de sus dos (2) hijos menores de edad, los cuales recibían educación virtual en tiempo real en el hogar, y que su hijo menor estaba recibiendo servicios profesiones de terapia psicológica.[6] El Sr. Tirado González acompañó la carta con una certificación sobre el cierre escolar, una certificación que acreditaba que su esposa era empleada del Hospital Perea en Mayagüez y certificaciones de los servicios de terapia psicológica de su hijo.

Así las cosas, el 13 de abril de 2021, el NSE emitió *una Determinación de Asunto No Monetario: Verificación Laboral.[7]* En esta, el NSE determinó que el Sr. Tirado Gonzáles no era elegible para recibir los beneficios del PUA toda vez que los documentos presentados por el Sr. Tirado González no eran suficientes para acreditar que tuvo (o iba a tener) un empleo o trabajo por cuenta propia previo a verse afectado por la emergencia del COVID-19.

El 14 de enero de 2024, se celebró una audiencia telefónica ante un árbitro de la cual participó el Sr. Tirado González[8] y, el 15 de marzo de 2024, la División de Apelaciones de la Secretaria de Asuntos Legales y Normas del Departamento del Trabajo y Recursos Humanos (en adelante, Secretaria de Asuntos Legales) emitió una *Resolución,* en la cual, luego de evaluadas las alegaciones y la

---

[6] Apéndice del recurso, págs. 7-10.
[7] Apéndice del recurso, págs. 11-12.
[8] Apéndice del recurso, págs. 15-17.

evidencia que obraba en el expediente, realizó las siguientes determinaciones de hechos:

"1. Reclamante indicó que al momento de la pandemia era cuidador de su padre quien murió en octubre de 2019, estaba desempleado.
Reclamante testificó que cuando lleg[ó] el cierre estaba desempleado buscando empleo. Present[ó] carta a computadora explicando su posición.
2. Reclamante estableció que además sus hijos estudiaban a distancia y él era su cuidador. Present[ó] carta de la escuela de sus hijos. Consta en la plataforma digital.
3. Reclamante indicó que a esta fecha no ha conseguido empleo y aunque realiz[ó] búsqueda de empleo este no tuvo ninguna oferta de empleo.
4. Reclamante confirm[ó] dirección de correo electrónico."

A base de estas determinaciones, la Secretaria de Asuntos Legales resolvió que el Sr. Tirado González no presentó evidencia para sustentar la Verificación Laboral. En consecuencia, confirmó la determinación del NSE concluyendo que el Sr. Tirado González era inelegible para recibir los beneficios del PUA.

El 28 de marzo de 2024, el Sr. Tirado González presentó una *Apelación* ante el Secretario del Trabajo.[9] En atención a este recurso, se emitió una *Decisión del Secretario del Trabajo y Recursos Humanos*, en la que se acogieron las determinaciones de hecho de la *Resolución* de 15 de marzo de 2024 y se añadieron las siguientes:

"[…]
2. El reclamante en su escrito de apelación admitió que antes de la pandemia estuvo haciendo gestiones de búsqueda de empleo de manera presencial pero no contaba con oferta alguna, ni evidencia sobre sus esfuerzos por conseguir empleo. A la fecha de la audiencia ante la Árbitro no había podido conseguir ningún empleo, es decir para el 14 de marzo de 2024.
3. Surge de la plataforma FastPUA que el reclamante-apelante al presentar su solicitud de beneficios seleccionó que tenía planificado comenzar un empleo afectado por pandemia y que proveería alguna o todas las evidencias de la siguiente para probarlo: Oferta de empleo emitida por el patrono potencial u otra documentación. De la plataforma no surge ninguna evidencia para sustentar su solicitud de beneficios.
4. Surge del Sistema Automatizado de Beneficios (SABEN), que el reclamante no tiene historial de empleo desde el año 2010."

---

[9] Apéndice del recurso, pág. 18.

Finalmente, se concluyó que el Sr. Tirado González no demostró la existencia de otra evidencia que razonablemente menoscabara la prueba creída por el árbitro. Por tanto, se confirmó la *Resolución* del árbitro determinando que el Sr. Matías Méndez era inelegible para recibir los beneficios del seguro por desempleo a tenor con la ley *Coronavirus Aid, Relief, and Economic Security Act, infra.*

Oportunamente, el Sr. Tirado González presentó una *Reconsideración.*[10] No obstante, el Secretario del Trabajo y Recursos Humanos sostuvo su determinación inicial.[11]

Inconforme con esta determinación, el Sr. Tirado González presentó ante nos el 18 de julio de 2024 un recurso de *Revisión Administrativa* solicitando la revisión de dicha decisión. En su recurso, el Sr. Tirado González nos solicita que evaluemos la documentación sometida a la agencia.

El 6 de agosto de 2024, emitimos *Resolución* concediéndole un término de veinte (20) días a la parte recurrida para expresar su posición con respecto al recurso. Transcurrido dicho término sin que la parte recurrida haya comparecido, procedemos a resolver el recurso sin contar con el beneficio de su posición.

**II**

**A.**

La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable. *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferrer v. A. R. Pe.*, 172 DPR 254, 264 (2007). A esos efectos, la revisión judicial comprende tres aspectos: la concesión del remedio apropiado, la revisión de las determinaciones

---

[10] Apéndice del recurso, pág. 23.
[11] Apéndice del recurso, págs. 24-25

de hecho conforme al criterio de evidencia sustancial, y la revisión completa de las conclusiones de derecho. *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010) y *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279-280 (1999).

Nuestro Tribunal Supremo ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Batista, Nobbe v. Jta. Directores,* supra, pág. 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011); *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397-398 (1999). La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Íd.*, citando a *Pereira Suárez v. Jta. Dir. Cond.,* supra*; Otero v. Toyota*, 163 DPR 716, 728 (2005). Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa, como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997). Por lo tanto, el tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa. *Otero v. Toyota*, supra, pág. 729.

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir

que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 245 (2007).

Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo. *Otero v. Toyota,* supra, pág. 728. En cambio, las conclusiones de derecho son revisables en todos sus aspectos. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 894 (2008). De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra. *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 DPR 70, 75-76 (2000). Así pues, si el punto de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación. *Rivera v. A & C Development Corp.,* 144 DPR 450, 461 (1997).

Sin embargo, aun cuando el tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente. *López Borges v. Adm. Corrección,* 185 DPR 603, 626 (2012).

**B.**

El *Coronavirus Aid, Relief, and Economic Security Act* (*CARES Act*) es una legislación económica federal, creada en respuesta a la emergencia causada por el COVID-19. 15 USCA sec. 9001 *et seq.* Esta legislación buscó mitigar el impacto económico que la pandemia ejerció sobre los empleados, familias y comercios.

En su sección 2101 el *CARES Act* crea el *Pandemic Unemployment Assistance* (PUA). 15 USCA sec. 9021. Este programa

federal fue hecho para proveer asistencia económica a personas desempleadas y afectadas por el COVID-19, pero que no cualificaban para los beneficios de desempleo estatales. Sección 207 del *CARES Act*, sec. 2107(a)(2), 15 USCA sec. 9025. En específico, dicha sección establece que:

(a) Federal-State agreements

(1) In general
Any State which desires to do so may enter into and participate in an agreement under this section with the Secretary of Labor (in this section referred to as the "Secretary"). Any State which is a party to an agreement under this section may, upon providing 30 days' written notice to the Secretary, terminate such agreement.
(2) Provisions of agreement
Any agreement under paragraph (1) shall provide that the State agency of the State will make payments of pandemic emergency unemployment compensation to individuals who--
(A) have exhausted all rights to regular compensation under the State law or under Federal law with respect to a benefit year (excluding any benefit year that ended before July 1, 2019);
(B) have no rights to regular compensation with respect to a week under such law or any other State unemployment compensation law or to compensation under any other Federal law;
(C) are not receiving compensation with respect to such week under the unemployment compensation law of Canada; **and**
**(D) are able to work, available to work, and actively seeking work.** (Énfasis nuestro).

De entre las personas que cualificaban para el PUA se encuentran:

(3) Covered individual
The term "covered individual"--
(A) means an individual who--
(i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title;
(ii) provides self-certification that the individual--
(I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because--

(aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;

(bb) a member of the individual's household has been diagnosed with COVID-19;

(cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section; or

(II) is self-employed, is seeking part-time employment, does not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, and meets the requirements of subclause (I); and

(iii) provides documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment not later than 21 days after the later of the date on which the individual submits an application for pandemic unemployment assistance under this section or the date on which an individual is directed by the State Agency to submit such

documentation in accordance with section 625.6(e) of title 20, Code of Federal Regulations, or any successor thereto, except that such deadline may be extended if the individual has shown good cause under applicable State law for failing to submit such documentation; and
(B) does not include--
(i) an individual who has the ability to telework with pay; or
(ii) an individual who is receiving paid sick leave or other paid leave benefits, regardless of whether the individual meets a qualification described in items (aa) through (kk) of subparagraph (A)(i)(I). 15 USCA sec. 9021.

**III**

En su recurso de *Revisión Judicial,* el Sr. Tirado González nos solicita que revisemos la determinación del DTRH, mediante la cual fue declarado inelegible para recibir los beneficios del seguro por desempleo a tenor con la *CARES Act* tomando en consideración la documentación que sometió ante la agencia sobre la Verificación Laboral para poder determinar su elegibilidad, la cual para la agencia fue insuficiente para acreditar sus gestiones en la búsqueda de empleo que debía realizar conforme a las exigencias de la ley.

Según expusimos, en nuestro ordenamiento jurídico se reconoce que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal apelativo si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Batista, Nobbe v. Jta. Directores,* supra. Por lo tanto, el tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa. *Otero v. Toyota,* supra. De este modo, si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo. *Íd.*

Surge del expediente que, al momento en que la agencia le requirió información al Sr. Tirado González sobre Verificación Laboral para determinar su elegibilidad, este solo presentó prueba sobre una certificación del cierre de la escuela de sus hijos, una certificación de su esposa como empleada del Hospital Perea en Mayagüez y unas certificaciones de asistencia a la psicóloga. Es decir, el expediente está huérfano de evidencia que acredite las gestiones realizadas por el Sr. Tirado González en la búsqueda de empleo. Igualmente, sí se desprende del expediente que el Sr. Tirado González no tiene empleo desde el 2010, esto es, diez (10) años previo a la pandemia. De esta forma, el Sr. Tirado González no logró demostrarle a la agencia y a este Tribunal desde qué momento estaba en la búsqueda de empleo.

Luego de un análisis ponderado del expediente administrativo, concluimos que la determinación del DTRH fue la correcta basada en la prueba que tuvo ante su consideración.

**IV**

Por los fundamentos expuestos, confirmamos la determinación de la *Decisión del Secretario del Trabajo y Recursos Humanos.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones